## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD E. MUTH,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:14-cv-01798** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **DENNIS A. WOODRING, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

Before the Court are two motions to dismiss Plaintiff's amended complaint, the first filed

by Defendant State Farm Fire & Casualty Co. ("State Farm"), (Doc. No. 26), and the second

filed by Defendants City of Harrisburg ("Harrisburg") and Jeffrey M. Shriver (Doc. No. 27).  For

the reasons that follow, State Farm's motion will be granted, and Defendants Harrisburg and

Shriver's motion will be granted in part and denied in part.

## I.      BACKGROUND[1]

Plaintiff Ronald E. Muth's amended complaint concerns criminal charges that were

allegedly improperly filed against him and were ultimately dropped.  (Doc. No. 23 ¶¶ 38-68.)

The criminal charges at the center of this case stem from a fire that occurred on June 10, 2009, at

a property owned by Plaintiff located at 2007 Manada Street, Harrisburg, Dauphin County.  (<u>Id.</u>

¶ 10.)  On that date, a fire was reported at the property at approximately 6:16 PM.  (<u>Id.</u>)  Plaintiff

alleges that Individual Defendants Dennis Woodring, a detective with the Dauphin County Fire,

Explosion, and Terrorism Unit, Fire Chief Daniel Soulier, with the Harrisburg Bureau of Fire,

and Defendant Jeffrey M. Schriver, a detective with the Harrisburg Bureau of Police, conducted

---

[1]The following background is taken from the allegations of Plaintiff's amended
complaint (Doc. No. 23).

an investigation of the cause and origin of the fire.  (Id. ¶ 12.)  Plaintiff alleges that Defendant

Woodring made the following observations and reached the following conclusions:

a.      Fire personnel reported that the front and rear doors to the property "appeared to be secured" when they arrived, and the property "appeared to be vacant."

b.      Evidence that "some type of tool was used to force the front door."

c.      He observed "pieces of furniture and clothing, in the structure, although it didn't appear that anyone was living in the house."

d.      He observed that the "electrical service is energized at the time of the fire" but did not find "evidence of fault, failure, or malfunction" and "is eliminated as an ignition for the fire."

e.      He eliminated the electrical outlet as a fire source after noting that there is "no evidence of any electrical activity on the remains" and that there "is no indication that anything was even plugged into the outlet at the time of the fire."

f.      He discovered "the remains of a power strip and its electrical cord," which he "considered and eliminated as a cause of the fire."

g.      He eliminated the furnace as an ignition source.

h.      He noted that "after ignition the fire was a slow developing fire" and that "it doesn't appear that the growth of the fire was assisted by any type of accelerant."

i.      He noted that an Accelerant Detection K9 confirmed the lack of an accelerant.

j.      He located "the remains of what appears to be a couch" with "heavy, even fire damage to the entire couch."

k.      He noted that "The fire patterns in the room of origin (middle first floor) show that the fire originated in the sofa."

l.      He concluded "From all of the evidence and the fire patterns, the fire appears to have started on the couch cushions."

m.      He searched for "smoking materials" but did not locate any "in the

area of origin."

n.   He concluded that "an open flame from a cigarette lighter or match was the ignition source."

o.   He concluded that "There are no accidental causes for the fire" and that "This fire is being ruled arson."

p.   He was advised "that a white male in a red vehicle was seen by neighbors, leaving the structure just prior to the fire."

(Id. ¶ 13.)

Plaintiff alleges that Defendant Schriver responded to the fire scene and obtained the following material information:

a.   A police officer from the Harrisburg Bureau of Police advised Defendant Schriver of the following:

1.   That "vice had assisted the Dauphin County Drug Task Force and the PA State Police at the residence on 6/2."

2.   A neighbor advised him "that the occupants were in jail, because the house was raided last week."

3.   The same neighbor advised him "that about an hour before the fire he observed a red SUV pull up to the house and "Big" [sic] white male walked up to the house."

4.   The neighbor reported that the male had brown hair, was wearing a green t-shirt, but he did not see his face.

5.   The neighbor said that he saw the male enter the property but that the unidentified male was not inside very long.

6.   The neighbor said that he thought he saw keys but did not know if the unidentified male had used a key to enter the property.

b.   Defendant Schriver found the rear door to the property to be secure, and determined that the front door had been forced open by the fire department.

c.   It appeared to Defendant Schriver that the occupants of the property were

3

in the process of moving out.

d.      Defendant Schriver located the remains of the couch on the first floor in the middle room.

e.      Defendant Schriver determined that there were no tripped electrical breakers in the electrical panel[] and he did not observe electrical devices near the couch.

f.      An accelerant detection K9 did not indicate the presence of an ignitable liquid and there was no odor related to same.

g.      Defendant Schriver concluded that "Because there was no accidental ignition source located, this fire is determined to be incendiary in nature."

(Id. ¶ 14.)  Plaintiff further alleges with regard to Defendant Schriver that Schriver arrived at

Plaintiff's residence at approximately 9:15 PM, advised him about the fire, and noted the

following:

a.      There was a red Nissan Xterra in the driveway and Muth was wearing a green t-shirt.

b.      Muth advised Defendant Schriver of the following:

1.      For approximately one year, the property had been rented to two adults – one male and one female.

2.      Pursuant to his agreement with his tenants, Muth did not have a key to the property.

3.      About one week prior, Muth determined with his tenants that the water heater at the property needed to be replaced.

4.      Muth advised his tenants that when the water heater arrived, he would contact them to schedule a time to install it.

5.      On the date of the fire, he called the female tenant's cellphone several times but was not able to reach her.

6.      At around 5:30 PM, he went to the property in the hopes of dropping off the water heater that was scheduled to be installed by

4

a third party at 7:00 PM.

7.      Muth knocked on his tenants' door and again attempted
        unsuccessfully to call his tenant.

8.      After determining that his tenants were not home, Muth cancelled
        the water heater installation, went to pick up Chinese food that
        had been previously ordered, and returned home.

9.      The tenants were heavy smokers and usually had numerous items
        plugged in near the couch in question.

(Id. ¶ 15.)

Plaintiff's complaint makes a number of allegations regarding access to the property on

the day of the fire.  Specifically, Plaintiff alleges that Defendant Schriver advised him that a drug

raid had been conducted at the property on June 3, 2009, and that his tenants were incarcerated.

(Id. ¶ 16.)  Defendant Schriver spoke to the neighbor who had been previously interviewed, and

this time the neighbor stated that the male was at the property for approximately 16 minutes, had

a key, and at one point exited the property, obtained what appeared to be a glass container, and

reentered the property.  (Id. ¶¶ 17-18.)  Plaintiff alleges that the neighbor was not asked to pick

him out of a line-up and never identified him as the male who he believed had entered the

property.  (Id. ¶ 19.) Plaintiff further alleges that Defendant Schriver located and interviewed

both tenants who confirmed that on the date in question, he did not have a key to the property.

(Id. ¶ 20.)  Plaintiff alleges that had Defendant Schriver spoken to the appropriate persons on the

Drug Task Force, he would have been advised that the door that had been forced open had been

secured by the Task Force before they left the property.  (Id. ¶ 21.)  Plaintiff alleges that on June

11, 2009, a neighbor informed him that on the date of the fire, the female tenant had cleaned out

the property, and on that same date, he met with Defendant Schriver and advised him of what the

5

neighbor had told him.  (Id. ¶¶ 22-23.) Plaintiff alleges that Defendant Schriver confirmed the

information and advised him that it had been reported to him that the female tenant had been at

the property with an elderly couple.  (Id. ¶ 24.)  Plaintiff alleges that another neighbor advised

Schriver that on either the date of the fire or the day prior to the fire, he had seen a young female

at the property with a tan van.  (Id. ¶ 23.)  Plaintiff further alleges that Defendant Schriver

refused to take receipt of his receipts for the water heater and Chinese food, and refused to

contact the persons who were scheduled to install the water heater.  (Id. ¶¶ 26-27.)

    With regard to Defendant State Farm, Plaintiff alleges that on June 15, 2009, at the

request of State Farm, Lee McAdams of Fire and Explosion Investigations, LLC, examined the

fire scene, and noted in relevant part the following:

> Detective Dennis Woodring of the Dauphin County Criminal Investigation
> Unit investigated the fire and determined it to be deliberately set on the
> sofa.  He could not find anything to indicate this fire was from an
> accidental cause.  He indicated that someone had seen a maroon or red
> color SUV leave the front of the home just prior to the fire.  Because of
> this he was able to eliminate the fire having started from any type of
> misplaced cigarette.  He also said the owner has a similar color vehicle.
>
> It is my opinion this fire started in the middle room on the first floor along
> the east wall at a point where a sofa was located.  Based on my examination,
> along with my elimination of ordinary, accidental causes and the information
> from Detective Woodring regarding someone leaving the home just
> prior to the fire, I feel it was deliberately set on the sofa.  I eliminated the
> only electrical source in the area of the sofa that was the receptacle and a
> power strip.

(Id. ¶ 28.)  Plaintiff alleges that the investigative report makes clear that the Individual

Defendants were collaborating with State Farm's agents within days of the fire.  (Id. ¶ 29.)

Plaintiff further alleges that on July 8, 2009, Defendant Schriver conferred with Ted Marzarni,

who is employed by State Farm, who advised him that State Farm was investigating the fire loss

claim.  (Id. ¶ 30.)  On this basis, Plaintiff alleges that Defendant State Farm, through Marzarni, and Defendant Schriver came to a meeting of the minds and agreed to help each other to establish their arson cases against him.  (Id. ¶ 31.)   Plaintiff alleges that State Farm knew that Defendant Schriver would rely on any information or evidence that it provided to him, and that if State Farm could establish that he started the fire in question, State Farm could avoid having to pay him for the damages caused by the fire.  (Id. ¶¶ 32-33.)

Plaintiff alleges that when an insurance company's investigation indicates that the probable cause of the fire loss was arson, the Pennsylvania Arson Reporting Immunity Act requires insurance companies to notify law enforcement agencies in writing, and upon request by the law enforcement agency, to provide the agency with any requested information.  (Id. ¶ 34.) Plaintiff alleges that State Farm's Marzarni encouraged Defendant Schriver to send State Farm an "Arson Immunity" letter "to obtain information" obtained during its investigation, and that although State Farm was not supposed to share information with law enforcement until requested to do so in writing, "information was shared and ended up in Defendant State Farm's arson investigator's report and in the affidavit of probable cause for the arrest warrant." (Id. ¶ 37.)

Plaintiff alleges that on October 9, 2009, Defendant Schriver filed the following criminal charges against him: (1) Arson Endangering Persons (Felony 1), 18 Pa.C.S. § 3301(a)(1)(I); (2) Causing or Risking Catastrophe (Felony 3), 18 Pa.C.S. § 3302(b); and (3) Insurance Fraud (Felony 3), 18 Pa.C.S. § 4117(a)(2), despite a lack of probable cause, and obtained a warrant for his arrest.  (Id. ¶¶ 38-40.)  Plaintiff alleges that the Affidavit of Probable Cause attached to the Criminal Complaint provides the following:

> On 6/10/09 at approximately 1816 hours, the Harrisburg police and fire
> bureaus were summoned to 2007 Manada Street for a structure fire.  Upon

the arrival of the responding units, a fire was discovered inside of this home.

2007 Manada Street is attached to 2005 Manada Street, inside of 2005 Manada Street resides two males, one is disabled.  Noone [sic] was living inside of 2007 Manada Street at the time of the fire.

After the fire was extinguished by the Harrisburg fire bureau, a post-fire investigation into the cause of the fire was completed.  This origin and cause investigation into the cause of the fire was completed.  This origin and cause investigation was accomplished by Detective Dennis Woodring of the Dauphin County Fire and Explosion Unit, Chief Daniel Soulier of the Fire Bureau, and your affiant.

The cause of the fire was determined to have been deliberately set in the middle of the room of the first floor.  The fire consumed a couch by some windows on the east side of the house.  The growing fire eventually caused these windows to fail and the fire was then discovered by persons residing at 2009 Manada Street.  The venting fire caused minor damage to their structure.

While at the scene, Barry Dean was interviewed by the police.  Dean resides across the street from 2007 Manada Street.  Dean reported that he observed a white male driving a red sport utility vehicle pull up in front of the house, exit his vehicle, approach the front door and eventually enter the property.  This white male then exited the front door and returned to his vehicle briefly and then reentered the house via the front door.  Minutes later the fire was discovered.

The owner of 2007 Manada Street is Ronald Muth.  Your affiant interviewed Muth at his residence in Swatara Township about two hours after the fire was extinguished.  Muth admitted to being at the property shortly before the fire was discovered.  I noted Muth drives a red Nissan Xterra and met the description provided by Dean.

Muth said he was at the property to do maintenance.  He was renting the property to two individuals.  Muth said when he went there he found noone [sic] home and left, he denied entering the house.

Muth denied entering the house in subsequent interviews with the police.

Through investigation, it was learned that Muth's tenants had recently moved out without his knowledge.  There were numerous problems inside the house caused by his former tenants.  Muth had been trying to sell the house prior to the fire but had no offers.

> Muth filed an insurance claim through State Farm to collect damages as a result of the fire.
>
> Muth is charged with arson, risking catastrophe, and insurance fraud.

(Id. ¶ 41.)

Plaintiff alleges that the Affidavit of Probable Cause does not state the requisite probable cause for the crimes charged, in that it contains false and misleading statements, fails to identify facts to support the elements of the crimes charged, or to support the conclusion that he participated in or caused the crimes charged, and fails to include material exculpatory evidence known to the affiant.  (Id. ¶¶ 42-43.)  Specifically, Plaintiff alleges that the Affidavit of Probable Cause includes the following false or misleading statements:

> a.   "The cause of the fire was determined to have been deliberately set in the middle room of the first floor."
>
> b.   "There were numerous problems inside the house caused by his former tenants."
>
> c.   "Muth had been trying to sell the house prior to the fire but had no offers."

(Id. ¶ 44.)  Plaintiff alleges that the Affidavit of Probable Cause fails to include the following exculpatory information:

> a.   That about one week prior to the fire, Muth determined with his tenants that the water heater at the property needed to be replaced.
>
> b.   That Muth had advised his tenants that when the water heater arrived, he would contact them to schedule a time to install it.
>
> c.   That store records confirmed that the water heater had been preordered and picked up on the date in question.
>
> d.   That the neighbor confirmed that the person who likely started the fire had entered the property but when firefighters arrived, the property was secure and they had to force entry.

e.      That the tenants corroborated the fact that Muth did not have a key, and that the water heater leaked and needed to be replaced.

f.      That the tenants were the only people with keys to the property and still had their keys.

g.      That on the date of the fire, Muth called the female tenant's cellphone several times but was not able to reach her.

h.      That at around 5:30 PM, he went to the property with the hope of locating his tenant(s), so that he could drop off the water heater that was scheduled to be installed by a third party at 7:00 PM.

i.      That the third parties confirmed that they were scheduled to install the water heater on the date/time in question.

j.      That Muth knocked on his tenants' door and again attempted unsuccessfully to call his tenant.

k.      That Muth's and/or the female tenant's phone records confirmed Muth's telephone calls.

l.      That after determining that his tenants were not home, Muth cancelled the water heater installation, went to pick up Chinese food that had been previously ordered, and returned home.

m.      That Muth had a Chinese food receipt that confirmed his whereabouts.

n.      That at least one tenant had been in the property either on the day of or the day prior to the fire.

o.      That the tenants were heavy smokers, and that the Drug Task Force had recently conducted a raid on the property and arrested the tenants for drug offenses.

p.      That the point of origin for the fire is not known and cannot be identified.

q,      That the elements of the fire cause (e.g. ignition source, first fuel and ignition sequence), are all unknown and cannot be identified.

r.      That both Lee McAdams and Defendant Woodring failed to identify any elements of a fire cause, e.g. ignition source, first fuel and ignition sequence.

s.      That Defendant Woodring's opinion regarding fire cause, i.e. that the fire was started from an open flame, is sheer speculation and not supported by any evidence.

t.      That despite knowing that the tenants smoked and finding ashtrays at the fire scene, no one at the fire scene attempted to find cigarette butts in the debris that had been located around the sofa but removed from the property during overhaul.

u.      That the fire origin and cause investigation conclusion was reached using the Negative Corpus Methodology only.

v.      That at the time, the Negative Corpus Methodology was not recognized as being able to yield valid or reliable results, and was widely regarded as being improper and unethical.

w.      That fire cause determination was supported only by the absence of evidence, and the elimination of "accidental causes"; which is not consistent with scientific method, and fails to meet the requirements of NFPA 1033, *Standard for Professional Qualifications for Fire Investigator*, §4.1.2.

x.      That the fire origin and cause investigation failed to comply with §4.3.7 "Avoid Presumption," which provides in relevant part:

> All investigations of fire and explosion incidents should be approached by the investigator without presumption as to origin, ignition sequence, cause, fire spread, or responsibility for incident until the use of scientific method has yielded a provable hypothesis which cannot be disproven by rigorous testing.

y.      That Defendant State Farm participated in and influenced the outcome of the criminal investigation.

(Id. ¶ 45.)

Plaintiff alleges that on the basis of the Criminal Complaint described above, on October 11, 2009, the Pennsylvania State Police served the warrant and arrested him, placing him in handcuffs at his place of employment, and transporting him to a district justice's office, where he was arraigned and released on bail.  (Id. ¶¶ 46-47.)  Plaintiff alleges that he was immediately

suspended from his employment without pay, pending an outcome of the criminal charges. (Id. ¶ 48.)

With regard to State Farm, Plaintiff alleges that on October 12, 2009, Defendant Schriver faxed the "Arson Immunity" letter to State Farm, who in response sent him information about its investigation; however, Plaintiff alleges that State Farm did not provide him with the requisite notice required by the Act that it had shared such information. (Id. ¶¶ 49-50.) Plaintiff alleges that "[i]nformation received from Defendant State Farm influenced Defendant Schriver's criminal investigation and served in part as a basis for the criminal charges." (Id. ¶ 51.)

Plaintiff alleges that the Defendants possessed exculpatory evidence that vitiated probable cause but failed to timely provide the evidence to the prosecutor; thereby circumventing and undermining the prosecutor's discretion. (Id. ¶ 52.) Plaintiff alleges that the "Defendants knew that the prosecutor was relying on their purported expertise as trained and experienced fire investigators but failed to advise the prosecutor that (a) they conducted their investigation pursuant to defective policies and procedures, (b) they were not properly trained on current fire investigation standards and techniques, and that as a result, (c) their opinions relied on the use of the "Negative Corpus Methodology," a methodology which is not recognized in the industry as being able to yield valid or reliable results, and is widely regarded in the industry as being improper, unethical and junk science." (Id. ¶ 53.) Plaintiff alleges that "[a]s a result of the Defendants' failure to provide the prosecutor with all available information and evidence, including exculpatory evidence, the prosecutor filed an Information against Muth for the crimes charged, and prosecuted Muth." (Id. ¶ 56.)

Plaintiff alleges that the NFPA 921, Guide for Fire and Explosion Investigations, was

issued on December 14, 2010, with an effective date of January 3, 2011, and specifically rejected

use of the "Negative Corpus Methodology" in the fire industry for determining cause and origin.

(Id. ¶ 64.) Plaintiff alleges that the "[d]efendants did not communicate the formal rejection of the

Negative Corpus Methodology to the prosecutor, and instead maliciously permitted the

prosecutor to continue with the prosecution for two (2) additional years." (Id. ¶ 65.)  Plaintiff

alleges that he retained a criminal defense attorney and provided the prosecutors with the

material exculpatory evidence that the Individual Defendants had previously failed to provide to

the prosecutor, which definitively established that the criminal charges were not (and never

were) supported by the requisite probable cause. (Id. ¶ 66.)  Plaintiff alleges that on October 12,

2012, three years after the filing of criminal charges against him, the Commonwealth filed the

Commonwealth's Application for a *Nolle Prosequi*, because it was "not in the best interest of the

Commonwealth to continue the prosecution of this matter." (Id. ¶ 67.)  Finally, Plaintiff alleges

that on October 26, 2012, the Court granted the Commonwealth's Application for a *Nolle*

*Prosequi* and dismissed the criminal charges against him. (Id. ¶ 68.)

On September 16, 2014, Plaintiff filed a complaint against Defendants State Farm,

Harrisburg, Jeffrey Shriver, Dauphin County, and Dennis Woodring, alleging claims pursuant to

42 U.S.C. § 1983.  (Doc. No. 1.)  Defendants Dauphin County and Dennis Woodring answered

the complaint on November 17, 2014. (Doc. No. 18.)  On December 8, 2014, Defendant State

Farm filed a motion to dismiss Plaintiff's complaint against it (Doc. No. 19), as did Defendants

Harrisburg and Jeffrey Shriver.  (Doc. No. 20.)  Rather than oppose the motions, Plaintiff filed

an amended complaint against all Defendants on January 5, 2015. (Doc. No. 23.)  The amended

complaint contains three counts: count one asserts a claim against Individual Defendants

Woodring and Shriver entitled "Fourth and Fourteenth Amendments - Malicious Prosecution Pursuant to 42 U.S.C. § 1983;" count two asserts a claim against the Individual Defendants and Defendant State Farm for "Conspiracy to Violate Fourth and Fourteenth Amendments (Malicious Prosecution) Pursuant to 42 U.S.C. § 1983;" and count three asserts a claim against Defendants  Harrisburg and Dauphin County entitled "Fourth and Fourteenth Amendments - Municipal Liability Pursuant to 42 U.S.C. § 1983."  On January 20, 2015, Defendants Harrisburg and Woodring filed an answer to the amended complaint.  (Doc. No. 25.)  On that same date, Defendant State Farm filed a motion to dismiss Plaintiff's amended complaint (Doc. No. 26), as did Defendants Harrisburg and Shriver. (Doc. No. 27.)  The motions have been fully briefed and are ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  Id.  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

　　　　Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the

United States Court of Appeals for the Third Circuit has identified the following steps a district

court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1)

identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory

allegations contained in the complaint "not entitled" to the assumption of truth; and (3)

determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly

give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d

Cir. 2010) (citation and quotation marks omitted).

III.    DISCUSSION

Plaintiff's amended complaint asserts three counts against the various defendants, all premised on a violation of 42 U.S.C. § 1983, which provides citizens a means to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."  Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a claim under this section, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

A.    Count One

As noted above, count one of Plaintiff's amended complaint raises a claim against Individual Defendants Woodring and Shriver for malicious prosecution in violation of the Fourth

and Fourteenth Amendments.[2, 3]   The elements of such a claim are: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

In moving to dismiss Plaintiff's malicious prosecution claim against him, Individual Defendant Shriver raises a number of arguments, including: (1) Plaintiff cannot show a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (2) Plaintiff cannot show that Defendant Shriver lacked probable cause; (3) Plaintiff cannot show that Defendant Shriver acted with malice; (4) he did not initiate the criminal proceeding;  and (5) he is entitled to qualified immunity.[4]   The Court will address these arguments in turn.

### 1.      Seizure

Defendant Shriver's argument that Plaintiff cannot show a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding can be easily addressed.  As Defendant correctly states, the law in this circuit is clear that an arrest alone does

---

[2]The Fourth Amendment, as incorporated into the Fourteenth Amendment, applies to the conduct of state officials.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).

[3]Individual Defendant Woodring did not file a motion to dismiss the claims Plaintiff has asserted against him; accordingly, only the Section 1983 claims directed against Individual Defendant Shriver are addressed in this memorandum.

[4]It appears that Defendant Shriver does not challenge Plaintiff's satisfaction of the fifth element of a malicious prosecution claim – that the legal proceeding at issue here ended in Plaintiff's favor.

not satisfy the seizure element of a Fourth Amendment malicious prosecution claim. <u>Wiltz v.</u>

<u>Middlesex Cnty. Office of Prosecutor</u>, 249 Fed. Appx. 944, 949 (3d Cir. 2007). In <u>Wiltz</u>, the

Third Circuit held that an allegation of arrest was insufficient to meet the seizure element of a

Section 1983 malicious prosecution claim, but that a plaintiff may satisfy this element by

showing that he or she was required to post bail or was restricted in travel, or by showing "other

types of onerous non-custodial restrictions." <u>Id.</u> The court noted that such requirements could

consist of a plaintiff's allegation that "she was incarcerated, required to post bond, maintain

contact with Pretrial Services, refrain from traveling, or that she endured any other 'post-

indictment' deprivation of liberty as a result of the legal proceedings." <u>Id.</u>

Defendant argues that Plaintiff's amended complaint alleges no more than an arrest

subsequent to the filing of criminal charges against him, with no travel restrictions or

requirement to post bail, and therefore, fails to allege facts sufficient to support the seizure

requirement. (Doc. No. 37 at 16-17.) In opposition, Plaintiff argues that because he "was placed

in handcuffs and transported to the district justice's office in the rear of a locked patrol vehicle,

pursuant to a warrant for his arrest that was obtained as a consequence of the filing of criminal

charges, [he] suffered the requisite deprivation of liberty" required for a seizure. (Doc. No. 40 at

12.) As Defendant correctly notes, this allegation, by itself, is insufficient to establish a seizure,

as it merely asserts the initial arrest. However, Plaintiff alleges in his amended complaint that he

was "released on bail." (Doc. No. 23 ¶ 47.) As discussed above, the allegation of a release on

bail is sufficient to support an inference of a post-indictment deprivation of liberty as a result of

legal proceedings, <u>see</u> <u>Wiltz</u>, 249 Fed. Appx. at 949, and therefore, Plaintiff's amended

complaint alleges facts supporting a reasonable inference that he suffered a deprivation of liberty

consistent with the concept of seizure, as required in a Section 1983 malicious prosecution claim.

### 2.      Probable Cause and Malice

Defendant Shriver also argues (1) that Plaintiff cannot show that he lacked probable cause, and later (2) that Plaintiff cannot show that he acted with malice.  (Doc. No. 37 at 12-14, 17.)  These two issues are interrelated, as the malice required for a malicious prosecution claim can be inferred from a finding of a lack of probable cause.  See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) abrogated on other grounds, Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (internal quotations and citations omitted) (actual malice in the context of malicious prosecution is defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose. Malice may be inferred from the absence of probable cause.");  Collins v. Jones, No. 13-07613, 2015 WL 790055, at *6 (E.D. Pa. Feb. 24, 2015) (same);  Lawson v. City of Coatesville, No. 12-6100, 2014 WL 4080708, at *6 n. 8 (E.D. Pa. Aug. 19, 2014) (same). Accordingly, as malice may be inferred from a lack of probable cause, the Court  turns to an analysis of the sufficiency of Plaintiff's allegations as to lack of probable cause to resolve these two issues.

Defendant argues that Plaintiff cannot show a lack of probable cause for his arrest.  (Doc. No. 37 at 12-14.)  To prevail on a malicious prosecution claim, a plaintiff must establish an absence of probable cause.  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)); see Dehaarte v. City of Newark, No. 04-21, 2006 WL 561925, at *5 (D.N.J. Mar. 7, 2006) ("a lack of probable cause is a sine qua non of malicious prosecution").  Plaintiff must, therefore, establish that Defendant Shriver, at the time he drafted the Affidavit of Probable Cause, lacked probable cause to arrest Plaintiff and institute

criminal proceedings against him.  See Meketa v. Kamoie, 955 F.Supp.2d 345, 364 (M.D. Pa.

2013) (citing Johnson, 477 F.3d at 81-82).  Probable cause to arrest "exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a

reasonable person to believe that an offense has been or is being committed by the person to be

arrested."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Courts should

make their probable cause determination on the "totality of the circumstances . . . [which means]

that a court should not isolate pieces of evidence when it determines whether there was probable

cause for a prosecution."  Halsey v. Pfeiffer, 750 F.3d 273, 301-02 (3d Cir. 2014) (internal

citation omitted).

      Generally, the question of probable cause in a Section 1983 damages suit is one for the

jury, particularly when the determination depends upon credibility conflicts.  Merkle v. Upper

Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000);  Montgomery v. DeSimone, 159 F.3d 120,

124 (3d Cir. 1998).  However, it is appropriate for a court to find probable cause as a matter of

law "if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a

reasonable jury could not find a lack of probable cause for [plaintiff's arrest]."  Montgomery,

159 F.3d at 124 (citation omitted) (denying summary judgment on malicious prosecution claim)

      In his brief, Defendant Shriver argues that any reasonable police officer would have

believed that he had probable cause to file charges against Plaintiff.  (Doc. No. 37 at 12.)

Defendant makes various arguments regarding why the facts support a finding of probable cause.

(Id. at 11-13).  Taking all of Plaintiff's factual allegations as true and resolving all inferences in

his favor, as the Court must do on a motion to dismiss, see In re Ins. Brokerage Antitrust Litig.,

618 F.3d at 314, the Court cannot determine at this stage of the proceedings, as Defendant asks

the Court to do, that probable cause existed as a matter of law.  Plaintiff's amended complaint

alleges facts that support a reasonable inference as to the questionable existence of probable

cause for his arrest and prosecution.  First, Plaintiff alleges that he lacked access to the property

on the day of the fire;  second, Plaintiff alleges that his presence at the property on the date in

question is explained by his efforts to coordinate the installation of a new water heater at the

property;  and third, he alleges that the cause and origin of the fire was determined pursuant to a

questionable methodology.  See Doc. No. 23 ¶ 45.  Accepting these allegations as true and

viewing them in the light most favorable to Plaintiff, the sufficiency of the probable cause

determination is a question properly left to a jury.  See Montgomery, 159 F.3d at 124 (question

of probable cause is one for jury, unless, when accepting all plaintiff's allegations as true, no

reasonable jury could find a lack of probable cause).

As the Court finds that Plaintiff's amended complaint alleges facts sufficient to support a

reasonable inference of a lack of probable cause, then it follows that Plaintiff's amended

complaint also alleges facts supporting a reasonable inference of malice, the next element of a

malicious prosecution claim, as malice can be inferred from a lack of probable cause.  See

Lippay, 996 F.2d at 1502 ("[m]alice may be inferred from the absence of probable cause.").  The

Court next turns to Defendant's argument that Plaintiff's malicious prosecution claim must fail

because he did not initiate the criminal proceeding against Plaintiff.

### 3      Initiation of Proceedings

Defendant Shriver argues that as a detective, he only filed charges against Plaintiff after

first obtaining approval from a prosecutor, and it was the prosecutor who "initiated" Plaintiff's

prosecution.  (Doc. No. 37 at 17.)  Defendant is correct that as a general matter, a prosecutor is

responsible for initiating a criminal proceeding.  "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer, may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." Gatter v. Zappile, 67 F.Supp.2d 515, 521 (E.D. Pa. 1999) (internal quotations omitted).  In other words, a police officer can be found to have initiated a prosecution if he "fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."  Telepo v. Palmer Twp., 40 F.Supp.2d 596, 610 (E.D. Pa. 1999) (internal quotations omitted), aff'd, 242 F.3d 371 (3d Cir. 2000)

Plaintiff alleges several false or misleading statements included in the Affidavit of Probable Cause, and also references a list of allegedly exculpatory or material information omitted from the Affidavit of Probable Cause.  (Doc. No. 23 ¶¶ 42-45.)  While Defendant argues that none of the information alleged to have been omitted from the Affidavit of Probable Cause was material to the probable cause determination, accepting Plaintiff's allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds that, in accordance with its probable cause discussion supra, Plaintiff has sufficiently alleged that Defendant Schriver included allegedly false information and/or omitted allegedly material or exculpatory information from the Affidavit of Probable Cause.  Therefore, those allegations are sufficient to support a reasonable inference that Defendant Shriver "initiated" the criminal proceeding against Plaintiff, as required for a Section 1983 malicious prosecution claim.

22

### 4.      Qualified Immunity

Given the preliminary stage of these proceedings, and the Court's resolution of the issues discussed above, the Court can quickly dispose of Defendant Shriver's qualified immunity argument.  The doctrine of qualified immunity – which Defendant Shriver raises as a defense – shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutes or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A determination of a government official's entitlement to qualified immunity is a two step process, requiring the Court to determine that the government official's conduct at issue violated a constitutional right, and then also decide whether he or she is entitled to immunity for any violation.  Halsey, 750 F.3d at 287.  The second step of this process examines whether the right violated was "clearly established at the time of the violation so that the unlawfulness of the conduct should have been apparent to an objectively reasonable official."  Id.

Accordingly, although the Court has determined that the allegations of Plaintiff's amended complaint suffice to state a claim for malicious prosecution pursuant to Section 1983, only upon a definitive determination that Defendant Shriver violated Plaintiff's constitutional rights should the Court move on to a decision as to whether he is entitled to qualified immunity for such a violation.  See id.; Pearson v. Callahan, 555 U.S. 223, 236 (2009) (recognizing that addressing the two elements of the qualified immunity analysis in the traditional order is "often beneficial").  Therefore, the Court cannot determine at this stage of the proceedings whether or not the qualified immunity defense is available to Defendant Shriver, and his motion to dismiss count one on that basis must be denied.

B.      Count Two

Count two of Plaintiff's amended complaint asserts a conspiracy claim against the

Individual Defendants and Defendant State Farm.  In order to establish a conspiracy under

Section 1983, a "plaintiff must demonstrate (1) the existence of a conspiracy involving state

action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the

conspiracy."  Eichelman v. Lancaster Cnty., 510 F.Supp.2d 377, 392 (E.D. Pa. 2007).  "A private

individual can become a state actor for purposes of § 1983 conspiracy liability if he or she is a

'willful participant in joint activity with the state or its agents.'"  Panayotides v. Rabenoid, 35

F.Supp.2d 411, 419 (E.D. Pa. 1999) (quoting Dutton v. Buckingham Twp., No. 97-3354, 1997

WL 732856, at * 2 (E.D. Pa. Nov. 13, 1997)).

With regard to the first element of a Section 1983 conspiracy claim, the Third Circuit has

held that to properly plead an unconstitutional conspiracy, a plaintiff "must assert facts from

which a conspiratorial agreement can be inferred."  Great W. Mining & Mineral Co. v. Fox

Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (citation omitted).  Similarly, in the

conspiracy context, the Supreme Court has stated that a pleading must contain "enough factual

matter (taken as true) to suggest that an agreement was made," or in other words, "plausible

grounds to infer an agreement."  Twombly, 550 U.S. at 556.  "Without more, parallel conduct

does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point

does not supply facts adequate to show illegality."  Id. at 556-57;  see Van Tassel v. Lawrence

County Domestic Relations Section, 659 F.Supp.2d 672, 700 (W.D.Pa. 2009) ("Plaintiff's

repeated allegations that the Defendants 'acted in concert' with each other are improper legal

conclusions, which this Court does not credit when considering Defendants' motions to

dismiss.").

In moving to dismiss this count, Defendant State Farm and Defendant Shriver argue that Plaintiff's amended complaint fails to allege sufficient facts supporting a reasonable inference of a conspiracy between State Farm and the Individual Defendants.  The Court must agree with Defendants.  The factual allegations of Plaintiff's amended complaint regarding the alleged conspiracy consist of the following:  (1) on June 15, 2009, at the request of State Farm, Lee McAdams of Fire and Explosion Investigations, LLC, examined the fire scene and noted the following in his subsequent report:

> Detective Dennis Woodring of the Dauphin County Criminal Investigation Unit investigated the fire and determined it to be deliberately set on the sofa. He could not find anything to indicate this fire was from an accidental cause.  He indicated that someone had seen a maroon or red color SUV leave the front of the home just prior to the fire.  Because of this he was able to eliminate the fire having started from any type of misplaced cigarette.  He also said the owner has a similar color vehicle.
>
> It is my opinion this fire started in the middle room on the first floor along the east wall at a point where a sofa was located.  Based on my examination, along with my elimination of ordinary, accidental causes and the information from Defective Woodring regarding someone leaving the home just prior to the fire, I feel it was deliberately set on the sofa.  I eliminated the only electrical source in the area of the sofa that was the receptacle and a power strip.

(Doc. No. 23 ¶ 28.);  (2) Plaintiff alleges that this text from Mr. McAdams' report indicates that "the Individual Defendants were collaborating with State Farm's agents" (Id. ¶ 29);  (3) on July 8, 2009, Defendant Schriver conferred with Ted Marzarni of State Farm, who advised him that State Farm was investigating the fire loss claim (Id. ¶ 30);  (4) Plaintiff alleges that State Farm, through Marzarni, and Defendant Schriver came to a meeting of the minds and agreed to help each other to establish their arson cases against Plaintiff (Id. ¶ 31);  (5) Plaintiff alleges that State

Farm knew that Defendant Shriver would rely on any information it provided to him, and that if State Farm could help establish that Muth started the fire, State Farm could avoid paying the claim (Id. ¶¶ 32-33);   (6) Plaintiff alleges that Marzarni encouraged Defendant Schriver to send State Farm an "Arson Immunity" letter pursuant to the Pennsylvania Arson Reporting Immunity Act, 40 Pa.C.S. §1610.1 et seq. [5] to obtain information it gathered during its investigation (Id. ¶ 36);  (7) on October 9, 2009, Defendant Schriver filed criminal charges against him and obtained a warrant for his arrest (Id. ¶ 39);  (8) on October 12, 2009, Defendant Schriver faxed the "Arson Immunity" letter to State Farm, and in response, State Farm sent him information about its investigation (Id. ¶ 49);  (9) information received from State Farm influenced Defendant Schriver's criminal investigation and served in part as a basis for the criminal charges (Id. ¶ 51).

Plaintiff has failed to allege sufficient factual matter from which a conspiratorial agreement can be inferred between State Farm and the Individual Defendants.  First, the fact that State Farm's investigator reached the same conclusion as the Individual Defendants regarding the source of the fire does not support a claim of conspiracy, as "[w]ithout more, parallel conduct

---

[5]The Act provides, in pertinent part,

> Any authorized agency may, in writing, require any insurance company at interest to release to the requesting authorized agency any and all relevant information or evidence deemed important to the authorized agency which the insurance company may have in its possession relating to a fire loss under investigation by the authorized agency.  Relevant information may include, without limitation herein: (1) pertinent policy information relevant to a fire loss under investigation, including any application for such a policy; (2) underwriting information or risk inspection reports; (3) policy premium payment records which are available; (4) history of previous claims made by the insured; and (5) material relating to the investigation of the loss, including statements by any person, proof of loss, and any other information relevant to the investigation by the authorized agency.  40 Pa.C.S. § 1610.3.

does not suggest conspiracy."  Twombly, 550 U.S. at 556-67; Eichelman, 510 F.Supp.2d at 393

(it is "not enough that the end result of the parties' independent conduct caused plaintiff harm or

even that the alleged perpetrators of the harm acted in conscious parallelism") (quotation

omitted).  In addition, the allegation that State Farm's investigator relied in part on information

from one of the detectives investigating the fire in reaching his conclusions does not suffice to

support a reasonable inference that there was some collaboration or agreement between the

detective and State Farm.  As an investigator into the cause of the fire, Mr. McAdams would be

expected to obtain all information available in the process of reaching his conclusions.

Second, while Plaintiff alleges that State Farm and Defendant Schriver "came to a

meeting of the minds and agreed to help each other to establish their arson cases against

Plaintiff," such an allegation amounts to nothing more than a legal conclusion which cannot be

credited when considering a motion to dismiss.  See Twombly, 550 U.S. at 556-57 ("[A]

conclusory allegation of agreement at some unidentified point does not supply facts adequate to

show illegality"); Van Tassel, 659 F.Supp.2d at 700 ("[R]epeated allegations that the Defendants

'acted in concert' with each other are improper legal conclusions which this Court does not

credit when considering [ ] motions to dismiss").

Finally, with regard to the actual sharing of information between Defendant Schriver and

State Farm, the allegations of Plaintiff's complaint do not support his conclusion that

information sent by State Farm to Defendant Schriver in response to the "Arson Immunity" letter

influenced Defendant Schriver's criminal investigation and served as a basis for the criminal

charges brought against Plaintiff, as Plaintiff alleges that Defendant Schriver filed criminal

charges against him on October 9, 2009, and then faxed the "Arson Immunity" letter requesting

information from State Farm on <u>October 12, 2009,</u> after the criminal charges had been filed.

Given the sequence of events alleged by Plaintiff in his amended complaint, any information

received from State Farm in response to the "Arson Immunity" letter of October 12, 2009,

cannot have served as a basis for criminal charges filed on October 9, 2009.  As Plaintiff's

amended complaint fails to allege sufficient factual matter supporting a reasonable inference of a

conspiratorial agreement between State Farm and the Individual Defendants, count two of

Plaintiff's amended complaint must be dismissed as to State Farm and Defendant Schriver.

### C.      Count Three

In count three of his amended complaint, Plaintiff asserts a municipal liability claim

against Defendants Harrisburg and Dauphin County.[6]  In very limited circumstances,

municipalities may be liable under Section 1983.  <u>Monell v. N.Y.C. Dept. of Soc. Servs.</u>, 436

U.S. 658, 690-92 (1978).  There is no vicarious liability in this context, so a plaintiff must show

that "lawmakers or [people] whose edicts or acts may fairly be said to represent official policy"

adopted a custom or policy that caused a constitutional violation.  <u>Id.</u> at 693.  Municipalities

cannot be held liable under Section 1983 "unless <u>deliberate</u> action attributable to the

municipality itself is the moving force behind the plaintiff's deprivation of federal rights."

<u>Board of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown</u>, 520 U.S. 397, 400 (1997) (emphasis in

original) (quotations omitted).  Such deliberate conduct may be shown through a council vote or

similar enactment, or a city may be liable for a "custom" that has obtained the force of law "by

virtue of the persistent practices of state [or local] officials."  <u>Adickes v. S.H. Kress & Co.</u>, 398

---

[6]Defendant Dauphin County did not filed a motion to dismiss the claim Plaintiff has asserted against it; accordingly, only the Section 1983 claim directed against Defendant Harrisburg is addressed in this memorandum.

U.S. 144, 167 (1970).  Though "it may seem contrary to common sense," municipal liability may

be based on a failure to train police officers, because a municipality may "actually have a <u>policy</u>

of not taking reasonable steps to train its employees."  <u>City of Canton v. Harris</u>, 489 U.S. 378,

390 (1989) (emphasis added).  The United States Court of Appeals for the Third Circuit has

described the "substantive elements" of a municipal liability failure-to-train theory as (1) a

custom or policy of inadequate training; (2) the municipality's deliberate indifference to that

inadequacy; and (3) a causal nexus between the training inadequacy and the constitutional

deprivation.  <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1213 (3d Cir. 1996); <u>Reitz v. County of Bucks</u>,

125 F.3d 139, 145 (3d Cir. 1997). The "deliberate indifference" standard generally requires

proof of repeated violations:

> If a program does not prevent constitutional violations, municipal
> decisionmakers may eventually be put on notice that a new program
> is called for.  Their continued adherence to an approach that they know
> or should know has failed to prevent tortious conduct by employees
> may establish the conscious disregard for the consequences of their
> action – the 'deliberate indifference' – necessary to trigger municipal
> liability.

<u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 407 (1997) (<u>citing</u> <u>Canton v. Harris</u>, 489 U.S.

378, 390 n. 10 (1989)).  More recently, the United States Supreme Court has cautioned that "[a]

municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train."  <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011).

In the failure-to-train context, plaintiffs face "a two-path track to municipal liability,

depending on whether a Section 1983 claim is premised on a municipal policy or custom."

<u>McTernan v. City of York, PA</u>, 564 F.3d 636, 657-658 (3d Cir. 2009) (citations omitted).  For a

"policy," a city is liable under Section 1983 when its decisionmakers, endowed with municipal

authority, affirmatively adopt a policy like a deficient police training program that then causes a constitutional deprivation.  See Adickes, 398 U.S. at 167.  For a "custom," a city may be liable under Section 1983 for constitutional deprivations caused by municipal practice "even though such a custom has not received formal approval through the body's official decisionmaking channels."  Monell, 436 U.S. at 690-91.  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law."  McTernan, 564 F.3d at 658 (quoting Andrews v. City of Phila, 895 F.2d 1469, 1480 (3d Cir. 1990)).  When a claim turns on police training, liability may arise either from the explicit adoption of the training program that is impermissibly deficient, or from the implicit adoption of a custom of not training police; in either case no municipal liability may attach "under circumstances where no wrong could be ascribed to the municipal decisionmakers."  See City of Oklahoma v. Tuttle, 471 U.S. 808, 821-22 (1985).

A plaintiff seeking to impose liability on a municipality for failure to train must plead that the municipality, through its policymakers, acted with "deliberate indifference" in adopting a custom or policy of inadequately training its investigators.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 124 (1992).  Deliberate indifference is a very high standard to meet, requiring at the pleading stage that a plaintiff make a plausible factual allegation that a municipal actor disregarded the known or obvious consequences of his or her actions.  See Board of Cnty. Comm'rs of Bryan Cnty, Oklahoma v. Brown, 520 U.S. 397, 410 (1997).  To establish deliberate indifference in a failure-to-train action, a plaintiff is ordinarily required to plead a pattern of constitutional violations that are both similar to the plaintiff's own alleged injury and attributable

to the policy or custom in question.[7]  Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011); Berg

v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  In the ordinary case, a pattern of

violations is necessary to show that the policymakers knew of their custom or policy's

deficiency, knew of their custom or policy's propensity to cause constitutional harm, and yet

deliberately took no curative action.  Connick, 131 S. Ct. at 1361.

In moving to dismiss this count, Defendant Harrisburg argues that while Plaintiff has

alleged that Harrisburg's procedures for fire investigation fell below the industry standard, such

allegations do not state a claim that Harrisburg acted with "deliberate indifference" in

maintaining its procedures.   Assuming that Plaintiff's amended complaint adequately pleads the

existence of a custom or policy of inadequate training, under Connick, Plaintiff must also allege

facts sufficient to support a reasonable inference of deliberate indifference to that failure to train,

which, as noted above, typically requires a "pattern of similar constitutional violations by

untrained employees."  Connick, 131 S. Ct. 1359-60.

Defendant argues that Plaintiff has not alleged any prior constitutional violations

involving the use of the "Negative Corpus Methodology" which would have placed Defendant

Harrisburg on notice of some deficiency in its use of "Negative Corpus Methodology" for arson

investigation in 2009.   The Court must agree with Defendant.  The allegation of Plaintiff's

---

[7]The Supreme Court has hypothesized that deliberate indifference may be shown absent a
pattern of violations in very limited situations.  City of Canton, 489 U.S. 378, 390 n. 10 (1989).
For the so-called single incident theory to apply, the city's policymakers must "know to a moral
certainty" that the specific constitutional deprivation will occur as a result of the city's custom or
policy.  Id.  Normally, the requisite pattern of violations puts policymakers on notice that their
custom or policy is inadequate, but in single-incident cases the policy's deficiency is so obvious
and the likelihood of constitutional harm is so great, that notice to the policymakers may be
assumed.  See Connick, 131 S. Ct. at 1361.

amended complaint pertaining to the issue of Defendant Harrisburg's awareness of the alleged

deficiency of its arson investigation methodology is entirely conclusory, stating that "Defendant

municipalities were on notice of a need for further training related to the issues discussed herein

but failed to provide the training, which resulted in Muth's constitutional rights being violated."

(Doc. No. 23 ¶ 148.) Absent any factual allegation of prior constitutional violations involving

arson arrests that Defendant knew or should have known of, Plaintiff has not alleged facts

supporting a reasonable inference that Defendant's continued use of the "Negative Corpus

Methodology" in 2009 amounted to deliberate indifference. See Connick, 131 S. Ct. at 1359-60

(2011) (a "pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train").  Accordingly,

count three of Plaintiff's amended complaint must be dismissed against Defendant Harrisburg.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will deny Defendant Shriver's motion to dismiss

count one of Plaintiff's amended complaint**.**  The Court will dismiss count two of Plaintiff's

amended complaint against Defendant State Farm and Defendant Shriver without prejudice.

Further, the Court will dismiss count three of Plaintiff's amended complaint against Defendant

Harrisburg without prejudice.  Plaintiff will be granted leave to file a second amended complaint

within 21 days of the date of this memorandum to address the pleading deficiencies identified

herein.  An order consistent with this memorandum follows.